IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEVEN L. NELSON

       Plaintiff,

vs.                                     No. CIV 02-1451 LCS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY.

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand (Doc. 12), filed June 16, 2003. The Commissioner of Social Security issued a final decision denying Plaintiff's application for supplemental security income. This matter comes before this Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is not well-taken and should be **DENIED**.

### I. STANDARD OF REVIEW

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence that a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record. *Id*. at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II.  PROCEDURAL HISTORY

Plaintiff, now 48 years old, filed his application for a period of disability, disability insurance benefits, and supplemental security income on October 31, 2000, alleging disability commencing on January 13, 2000. (R. at 14.) Plaintiff's alleged disability was due to depression, post-traumatic stress disorder ("PTSD"), back problems, sciatic nerve damage and hepatitis C. (R. at 360.) Plaintiff has a high school education and past relevant work as an electrician and

maintenance technician. (R. at 125; 130.)

Plaintiff's application for supplemental security income was denied at the initial level on April 20, 2001 (R. at 68), and at the reconsideration level on July 1, 2001. (R. at 60.) Plaintiff appealed the denial of his application by filing a Request for Hearing by Administrative Law Judge. (R. at 56.) On May 24, 2001, Gary J. Martone and A. Michelle Baca, attorneys, were retained to represent Plaintiff. (R. at 58.) The ALJ held a hearing on March 6, 2002, at which Plaintiff was represented by Gary J. Martone. (R. at 26.) Plaintiff and Kevin Davis, a vocational expert, testified at the hearing. (R. at 26.)

Plaintiff testified before the ALJ that he was currently homeless and living at homeless shelters or with friends. (R. at 29.) Plaintiff had been diagnosed with hepatitis C and stated that since the diagnosis he had little energy and generally did not feel good. (R. at 30.) He testified that he had not consumed alcohol for the past year and had been attending AA meetings approximately three to four times a week. (R. at 32.) He further testified that he was taking Zoloft for his depression and that this seemed to be helping a bit. (Id. at 33.) Plaintiff also reported that he had injured his back and crushed three discs in his lower spine. (R. at 35.) He stated that he was taking ibuprofen for the pain and this seemed to help a little and indicated that he experienced pain when he had to sit or stand for too long. (R. at 36.)

Under questioning by the ALJ, Plaintiff stated that his physical and mental conditions kept him from working because it was "hard to get up in the morning." (R. at 39.) During a typical day, Plaintiff indicated that he would stay at the shelter and would sometimes attend various programs offered there. (Id.) He stated that sometimes he didn't feel very good so he just tried to take it easy. (R. at 40.)

In the course of the hearing, the ALJ also questioned Kevin Davis, a vocational expert. (R. at 40-45.)  Mr. Davis testified that, given Plaintiff's present condition, he would not be able to perform his past relevant work.  (R. at 42.)  The ALJ asked Mr. Davis to evaluate a hypothetical individual limited to light exertional work with an inability for prolonged walking, activity limited to occasional postural movements, an ability to sit or stand for maximum intervals of one hour, and having only limited contact with supervisors.  (R. at 43; 44.)  Mr. Davis was able to identify several jobs that a hypothetical individual with Plaintiff's limitations could perform.  (Id.)

The ALJ issued his decision on June 25, 2002, (R. at 11.), analyzing Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  At the first step of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the filing of his application. (R. at 15.)  At the second step, the ALJ determined that Plaintiff had severe impairments consisting of physical impairments relative to degenerative disc disease of the thoracic and lumbar spine and the effects of hepatitis C.  (Id.)  The ALJ found that at no time had Plaintiff had a severe impairment relative to depression. (Id.), and that there was no evidence of any severe impairment relative to pancreatitis.  (R. at 18.)  At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments or combination of impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (Id.)  The ALJ also found that Plaintiff was not credible with regard to statements concerning the severity, persistence and limiting effects of his symptoms.  (R. at 20.)  At step four, the ALJ found that Plaintiff, based on an assessment of Residual Functional Capacity ("RFC"), was unable to return to any relevant past work.  (R. at

21.) At step five, the ALJ concluded that based on his RFC, Plaintiff retained the ability to perform light or sedentary work. (R. at 22.) The ALJ further concluded that Plaintiff was not, and had at no time been, disabled within the meaning of the Social Security Act. (Id.)

Plaintiff filed a Request for Review of Hearing Decision on August 28, 2002, (R. at 9.), and his attorney submitted a brief to the Appeals Council. On October 7, 2002, the Appeals Council, after considering the contentions raised in the brief, denied Plaintiff's request for review. (R. at 6-7.) Hence, the decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On November 15, 2002, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### III.  ANALYSIS AND FINDINGS

On October 20, 2000, Plaintiff indicated on a disability report that he was suffering from chronic manic depression, PTSD, hepatitis C, herniated discs and sciatic nerve damage. (R. at 124.) He stated that he was unable to work because he would become confused and depressed, and because of back pain and an inability to lift heavy objects. (Id.) Plaintiff is currently homeless and living in a shelter. With respect to household maintenance, Plaintiff stated that he was able to make his bed, fold blankets, and sweep and mop his area. (R. at 150.) Plaintiff indicated he was able to walk on a regular basis and climb stairs. (R. at 145.) He stated that he sometimes felt "off balance" due to a lack of feeling in his right toes resulting from sciatic nerve damage. (Id.)

Plaintiff worked as a building maintenance technician for five months in 1999. (R. at 137.) He worked as an electrician from 1993 to 1996, as an apprentice lineman from 1987 to 1991, and as a traffic signal electrician from 1981 to 1986. (Id.) Plaintiff reported that all of these jobs involved lifting of heavy objects (up to 100 lbs.), repair and maintenance and supervision of other

employees.  (R. at 138-141.)

Plaintiff is a recovering alcoholic and stated that he attended recovery group meetings on a daily basis.  (R. at 151.)  He also stated that he attended a mental health clinic twice a week and saw a therapist once a week.  (Id.)  Plaintiff wrote that he felt weak as a result of hepatitis C and further indicated that he was suffering from severe depression and anxiety and had trouble getting along with others.  (R. at 146-147.)  He was taking several medications at the time, including Zoloft for depression, Motrin for back pain and was receiving Interferon shots for hepatitis C.  (R. at 152.)

On April 12, 2001, Rene Gonzales, M.D. performed a consultative psychiatric examination on Plaintiff.  (R. at 263-266.)  Plaintiff complained of depression and stated he had been diagnosed with bipolar illness.  (R. at 263.)  He also indicated he had been attending AA meetings sporadically.  (Id.)  He advised Dr. Gonzales that he was taking Zoloft for psychological problems and stated that the medication seemed to be helping.  (Id.)  He also indicated he was taking Motrin for his back problems and stated this seemed to be helping as well.  (Id.)  During his consultation with Dr. Gonzales, Plaintiff stated that he had been admitted to the University of New Mexico medical center for six days in 2000 following a suicide attempt.  (Id.)  While at UNM, Plaintiff was diagnosed with alcohol dependance and substance-induced mood disorder.  (Id.)  At the time of his consultation with Dr. Gonzales, Plaintiff stated he had been sober for 38 days.  (Id.)  Plaintiff indicated that he continued to experience depression despite individual therapy and medication.  (Id.)

Plaintiff was able to respond well to Dr. Gonzales during the examination and answer questions appropriately.  (R. at 264.)  Dr. Gonzales noted that Plaintiff was dressed and groomed

appropriately. (Id.) Dr. Gonzales found that Plaintiff's eye contact and psychomotor activities were within normal limits and also noted that Plaintiff's speech and language, intensity, pitch and rate were normal. (Id.) During the examination, Plaintiff was coherent and did not appear to have aphasia, neologism, echolalia, stammering or clanging. (Id.) His mood appeared sad and depressed with affect appropriate to mood. (Id.) Plaintiff's thinking form and progression appeared normal with content showing some depressive trance. (Id.) Dr. Gonzales noted that Plaintiff's concentration appeared to be mildly impaired, although he appeared alert and oriented to person, time, place and situation. (Id.) Plaintiff did not appear to have any olfactory, visual, gustatory, auditory or tactile hallucinations. (Id.) Dr. Gonzales felt Plaintiff was not suicidal or homicidal. (Id.) His memory, immediate, recent and remote appeared intact. (Id.) Dr. Gonzales further noted that Plaintiff's judgment appeared normal. (Id.)

Dr. Gonzales' clinical impression was depressive disorder NOS[1] and alcohol dependance. (Id. at 265.) Plaintiff appeared to have mild limitations in understanding and remembering detailed and complex instructions. (Id.) He also had mild limitations in ability to attend and concentrate, in social interaction and ability to interact with the public, and in ability to adapt to changes in the workplace. (Id.) Plaintiff had no limitations with respect to sustained concentration and task persistence, ability to carry out instructions, ability to work without supervision and ability to carry out short and simple instructions. (Id.)

Dr. Gonzales rated Plaintiff's Global Assessment of Functioning ("GAF") score at 50 for

---

[1]Depressive Disorder Not Otherwise Specified includes disorders with depressive features in which the clinician has concluded that a depressive disorder is present but is unable to determine whether it is primary, due to a generalized medical condition, or substance induced. *Diagnostic and Statistical Manual of Mental Disorders* 381-82 (4th ed. 2000) [DSM-IV].

the present time with a GAF of 65 for the previous year. (R. at 264.) He recommended that Plaintiff continue to see a psychiatrist and indicated that changes in Plaintiff's medications might be indicated. (R. at 265.) An orthopedic consultation was also recommended to determine the severity of Plaintiff's back problems. (Id.) Dr. Gonzales opined that Plaintiff's prognosis for his psychological problems was good. (Id.)

### III. DISCUSSION

Plaintiff contends that the ALJ's decision was not supported by substantial evidence and that the ALJ failed to adequately develop the record. (Doc. 13) Plaintiff argues that the ALJ erred in finding his mental impairment to be 'nonsevere'. (R. at 15.)

Plaintiff first argues that the ALJ did not adequately develop the record by failing to order a second consultative psychiatric evaluation. Plaintiff contends that the evaluation performed by Rene Gonzales, M.D. did not comport with the minimum standards for consultative evaluations set forth in 20 C.F.R. § 404.1519(n), because the examination allegedly lasted for only 10 minutes. (Doc. 13.) This contention must fail for several reasons. It is axiomatic that, under the Social Security Act, the claimant bears the burden of proving a disability which prevents him from engaging in his prior work activity. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988)(quoting *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988)). Although Plaintiff's attorney indicated to the ALJ on March 5, 2002 that Plaintiff would testify at the hearing that the examination by Dr. Gonzales lasted only 10 minutes (R. at 170), in fact no such testimony was forthcoming at the hearing. (R. 24-46.) Had Plaintiff wished to raise a potential defect in the record or the need for a second psychiatric consultation, he had an adequate opportunity to do so at the hearing. Because no such evidence was raised by Plaintiff, the ALJ was correct in

accepting the findings of the consultative examination.

Plaintiff also errs in his reading of 20 C.F.R. § 404.1519(n).  While § 404.1519(n) advises a minimum scheduling interval of 40 minutes for a comprehensive psychiatric evaluation, the section goes on to state that 40 minutes is not required for the actual duration of the consultative examination, but merely that 40 minutes should be allowed for scheduling  Therefore, even if Plaintiff's contention regarding the length of Dr. Gonzales' examination is correct, this would not automatically require the ALJ to order a second consultative psychiatric evaluation.  Furthermore, it is apparent from the record that Dr. Gonzales conducted a thorough and complete review of the Plaintiff, such that a second consultative examination was unnecessary.  (R. at 263-266.)

Plaintiff next argues that the ALJ's reliance on Dr. Gonzales' report was misplaced because the opinions of treating physicians are typically afforded more weight than those of consulting physicians.  The Plaintiff correctly points out that the findings of a non-treating physician based upon limited contact and examination are generally of suspect reliability. *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002).

The analysis does not end here however.  In *McGoffin*, the Court found that the opinions of a consulting physician were of suspect reliability *in comparison with* the opinions of the claimant's treating physicians. (emphasis added)  *Id.* at 1253.  It is well-accepted that the opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(d)(2).  However, except for the report of Dr. Gonzales, the record is almost entirely devoid of medical opinions regarding Plaintiff's mental

9

state. Plaintiff admits that "the medical evidence from treating physicians regarding [Plaintiff's] mental impairment is sparse." (Doc. 13)  Although the Administrative Record does contain some records of Plaintiff's treatment for depression, these records are minimal and were not conducted by health care professionals who could legitimately be called Plaintiff's treating physicians for purposes of his psychological complaints (see e.g., R. at 181-182, 193-194, 197, 230-236, 251-252, 337-340, 351). As such, the ALJ was correct in relying on the conclusions of Dr. Gonzales.

The Tenth Circuit has held that absent an indication that an examining physician presented the only medical evidence submitted pertaining to the relevant time period, the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion. *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003)(quoting *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995)).  In this case however, Dr. Gonzales' report is the only substantial psychiatric evidence regarding Plaintiff's mental state.  As such, under *Doyal*, Dr. Gonzales' opinions are entitled to the weight traditionally afforded those of a treating physician, and the ALJ properly relied on those opinions in forming his conclusions. Therefore, the ALJ's determination regarding Plaintiff's mental state was supported by substantial evidence and is entitled to deference from this Court.

Plaintiff also contends that the ALJ's decision was not supported by substantial evidence. For this contention, Plaintiff argues that the ALJ erred in his treatment of Dr. Gonzales' opinion as to Plaintiff's Global Assessment of Functioning ("GAF") score.  The GAF scale is used to assess an individual's overall level of functioning.  This information is useful in planning treatment, measuring its impact and in predicting outcome.  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) [DSM-IV].  The GAF

scale is divided into 10 ranges of functioning. Determining a GAF rating involves making a subjective choice of a single value that best reflects the individual's overall level of functioning. *Id.* The description of each 10-point range in the GAF scale has two components: the first part covers symptom severity, and the second part covers functioning. *Id.* The GAF rating is within a particular decile if *either* the symptom severity *or* the level of functioning falls within the range. It should be noted that in situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two. *Id.* at 32-33.

    Dr. Gonzales assessed Plaintiff as having a GAF of 50 at the time of evaluation. (R. at 264.) Such a score indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). *Id.* at 34. The ALJ noted the GAF score of 50, but stated the GAF is a very rough assessment of functioning and the ALJ gave more weight to particularized observations in the record, with which Dr. Gonzales' overall findings were consistent. (R. at 17.)

    Plaintiff contends that a GAF of 50 is inconsistent with Dr. Gonzales' overall report and, as such, the ALJ had a duty to further develop the record. Plaintiff next argues that Dr. Gonzales' GAF rating of 50 constitutes an objective assessment of Plaintiff's level of function and the ALJ should not attempt to render his own psychiatric opinion. *Kemp v. Bowen*, 816 F.2d 1469 (10th Cir. 1987). However, the ALJ in this case did not attempt to render his own medical opinion, but instead relied on Dr. Gonzales' report which indicated that Plaintiff had only mild limitations with regard to a number of mental functions, such as concentration and social interaction, and no limitations in ability to interact with coworkers and supervisors or ability to carry out instructions and to work without supervision (R. at 265.)

Furthermore, while Plaintiff argues that a GAF score of 50 indicates inconsistencies in Dr. Gonzales' report, Dr. Gonzales in fact gave Plaintiff a GAF score of 65 for the previous year. (Id.)  A GAF score of 65 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household) but generally functioning pretty well with some meaningful interpersonal relationships.  DSM-IV at 34.  Such a score is consistent with Dr. Gonzales' overall impressions of Plaintiff and the ALJ was justified in relying on this report without a need to further develop the record.

Further, the ALJ found that the Plaintiff was not credible.  It is well established that subjective testimony alone that the claimant has symptoms cannot establish a finding of disability. *Gossett*, 862 F.2d 802, 806 (quoting *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988)).   By statute, objective medical evidence must establish an impairment and statements regarding the intensity and persistence of symptoms must be consistent with the medical findings and signs.  42 U.S.C. § 423(d)(5)(A) (Supp. 1988). Credibility determinations are particularly the province of the finder of fact and the Tenth Circuit has declined to upset such determinations when supported by substantial evidence.  *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990).

In the present case, the ALJ found that, although Plaintiff did have a medically determinable combination of impairments reasonably capable of producing pain and fatigue, Plaintiff was not credible as to the extent of his impairments.  (R. at 20.)  In making this determination, the ALJ considered the Plaintiff's manner while testifying, the consistency of his testimony with other statements on the record, and the Plaintiff's interest or bias in light of the

12

evidence in the case. (Id.)  The ALJ noted significant discrepancies between Plaintiff's testimony about his symptoms and the medical records regarding those symptoms.  (R. at 21.)  Although Plaintiff testified to disabling panic attacks and significant problems with nightmares, sleep and authority figures (R. at 32-34), his treatment records reflected no such symptoms.  (R. at 21.)  The ALJ described other inconsistencies, including statements relating to Plaintiff's orthopedic problems and reasons for loss of previous jobs, which served to undermine Plaintiff's credibility. (Id.)   The ALJ's determinations were thus supported by substantial evidence and as such, the decision of the Commissioner should be upheld.

### IV.  CONCLUSION

Upon review of the evidence presented on this Motion to Reverse and Remand for Rehearing, this Court has determined that the Commissioner's decision was supported by substantial evidence and that the ALJ adequately developed the record.  Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing is **DENIED**.

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**